UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEIN and
SUSAN MORRISON,

       Plaintiffs,

vs.

WELLS FARGO HOME MORTGAGE,
INC.,

       Defendant.

U.S.D.C. #

Hon. _____

Lower Case No. 09-102859-CZ

| | |
|---|---|
| Mel R. Partovich (P23103)<br>John McCarthy (P44171)<br>Attorneys for Plaintiffs<br>37887 W. 12 Mile Road Ste B<br>Farmington Hills, MI  48331<br>(248) 488-8180<br>partovich@aol.com | Matthew J. Boettcher (P40929)<br>Charity A. Olson (P68295)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI  48304<br>(248) 901-4035<br>(248) 901-4018<br>mboettcher@plunkettcooney.com<br>colson@plunkettcooney.com |

**NOTICE OF FILING REMOVAL**

**NOTICE OF REMOVAL TO FEDERAL COURT**

**VERIFICATION**

**PROOF OF SERVICE**

**PLUNKETT COONEY**

By:/s/ Charity A. Olson
    Matthew J. Boettcher (P40929)
    Charity A. Olson (P68295)
    Attorneys for Defendant
    Wells Fargo
    Plunkett Cooney
    38505 Woodward Ave.
    Suite 2000
    Bloomfield Hills, MI 48304
    248-901-4018
    colson@plunkettcooney.com

DATED:  August 17, 2009

Blmfield.P0830.P0830.1149373-1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEIN and
SUSAN MORRISON,

     Plaintiffs,

                     U.S.D.C. #

vs.

                     Hon. _____

WELLS FARGO HOME MORTGAGE, INC.,

                     Lower Case No. 09-102859-CZ

     Defendant.

| | |
|---|---|
| Mel R. Partovich (P23103) | Matthew J. Boettcher (P40929) |
| John McCarthy (P44171) | Charity A. Olson (P68295) |
| Attorneys for Plaintiff | PLUNKETT COONEY |
| 37887 W. 12 Mile Road Ste B | Attorneys for Defendant |
| Farmington Hills, MI  48331 | 38505 Woodward Ave., Suite 2000 |
| (248) 488-8180 | Bloomfield Hills, MI  48304 |
| partovich@aol.com | (248) 901-4035 |
| | (248) 901-4018 |
| | mboettcher@plunkettcooney.com |
| | colson@plunkettcooney.com |

## **NOTICE OF FILING REMOVAL**

TO:

| | |
|---|---|
| Mel R. Partovich (P23103) | Clerk of the Court |
| John McCarthy (P44171) | Oakland County Circuit Court |
| Attorneys for Plaintiff | 1200 N Telegraph Road |
| 37887 W. 12 Mile Road Ste B | Pontiac, MI  48341 |
| Farmington Hills, MI  48331 | |

     PLEASE TAKE NOTICE THAT Defendant, Wells Fargo Home

Mortgage, Inc. ("Wells Fargo"), has on this day, filed a Notice of Removal,

a copy of which is attached hereto, in the offices of the Clerk of the

United States District Court, Eastern District of Michigan, Southern Division.

Respectfully submitted,

PLUNKETT COONEY

By: /s/Charity A. Olson
    Matthew J. Boettcher (P40929)
    Charity A. Olson (P68295)
    Attorneys for Defendant
    Wells Fargo
    38505 Woodward Avenue
    Suite 2000
    Bloomfield Hills, MI 48304
    (248) 901-4035
    (248) 901-4018

Dated:  August 17, 2009    mboettcher@plunkettcooney.com
    colson@plunkettcooney.com

Blmfield.P0830.P0830.1149373-1

2

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEIN and
SUSAN MORRISON,

     Plaintiffs,

                         U.S.D.C. #

vs.

                         Hon. _____

WELLS FARGO HOME MORTGAGE,
INC.,                         Lower Case No. 09-102859-CZ

     Defendant.

| | |
|---|---|
| Mel R. Partovich (P23103)<br>John McCarthy (P44171)<br>Attorneys for Plaintiff<br>37887 W. 12 Mile Road Ste B<br>Farmington Hills, MI  48331<br>(248) 488-8180<br>partovich@aol.com | Matthew J. Boettcher (P40929)<br>Charity A. Olson (P68295)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI  48304<br>(248) 901-4035<br>(248) 901-4018<br>mboettcher@plunkettcooney.com<br>colson@plunkettcooney.com |

## NOTICE OF REMOVAL TO FEDERAL COURT

TO:   Clerk of the Court
       Mel R. Partovich, Esq.
       Attorneys for Plaintiff

      Defendant, Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), by its

attorneys, Plunkett Cooney, removes this action from the Oakland County

Circuit Court to the United States District Court for the Eastern District of

Michigan, Southern Division. In support of this Notice of Removal, Wells Fargo states:

1. On or about August 5, 2009, this action was commenced against Wells Fargo in the Oakland County Circuit Court.

2. Copies of the Summons, Complaint and Order to Show Cause are attached as Exhibit "A."

3. This removal is within 30-days of the filing of the action and, therefore, the removal is timely.

4. The documents attached as Exhibit "A" constitute all process, pleadings and orders received by Wells Fargo and/or otherwise of record in this action.

5. This action also involves a controversy that is wholly between citizens of different states under 28 U.S.C. § 1332.

6. When this action was filed, Plaintiffs were citizens of the State of Michigan.

7. Wells Fargo, more properly titled as "Wells Fargo Bank, N.A.", is chartered in Iowa. As such that is where its main office is and thus for diversity it is a citizen of Iowa. *Wachovia Bank v Schmidt*, 546 US 303, 126 SCt 941 (2006).

8. Plaintiffs' Complaint seeks, *inter alia*, to void Defendant's mortgage with a unpaid principal balance, as of August 14, 2009, of $278,550.50.

2

9.     The case is, therefore, removable on diversity grounds pursuant to 28 U.S.C. § 1441.

10.     A Notice of Filing Notice of Removal to Federal Court and a copy of this Notice of Removal of Civil Action will be filed promptly with the Oakland County Circuit Court as required by 28 U.S.C. § 1446(d) and copies of the same have been served upon Plaintiff's counsel as verified by the attached proof of service.

11.     Based upon the foregoing, Wells Fargo is entitled to remove this action to this Court under 28 U.S.C. § 1441, *et seq*.

**WHEREFORE**, Defendant requests that this Court take jurisdiction over this action and grant such other relief as the Court deems proper.

                              Respectfully submitted,

                              PLUNKETT COONEY

                              By:/s/Charity A. Olson
                                    Matthew J. Boettcher (P40929)
                                    Charity A. Olson (P68295)
                                    Attorneys for Defendant
                                    Wells Fargo
                                    38505 Woodward Avenue
                                    Suite 2000
                                    Bloomfield Hills, MI 48304
                                    (248) 901-4018
                                    colson@plunkettcooney.com

Dated:  August 17, 2009

Blmfield.P0830.P0830.1149373-1

3

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEIN and
SUSAN MORRISON,

    Plaintiffs,

                            U.S.D.C. #

vs.

                            Hon. _____

WELLS FARGO HOME MORTGAGE,
INC.,

                            Lower Case No. 09-102859-CZ

    Defendant.

| | |
|---|---|
| Mel R. Partovich (P23103)<br>John McCarthy (P44171)<br>Attorneys for Plaintiff<br>37887 W. 12 Mile Road Ste B<br>Farmington Hills, MI 48331<br>(248) 488-8180<br>partovich@aol.com | Matthew J. Boettcher (P40929)<br>Charity A. Olson (P68295)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>Wells Fargo<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI 48304<br>(248) 901-4035<br>(248) 901-4018<br>mboettcher@plunkettcooney.com<br>colson@plunkettcooney.com |

## CERTIFICATE OF SERVICE

    I hereby certify that on August 17, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and  that I have faxed and mailed by United States Postal Service to any parties that are not ECF participants.

**PLUNKETT COONEY**

By:/s/ Charity A. Olson
Matthew J. Boettcher (P40929)
Charity A. Olson (P68295)
Attorneys for Defendant,
Wells Fargo
Plunkett Cooney
38505 Woodward Ave.
Ste. 2000
Bloomfield Hills, MI 48304
248-901-4018
colson@plunkettcooney.com

DATED:  August 17, 2009

Blmfield.P0830.P0830.1149373-1

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL STEIN and
SUSAN MORRISON,

     Plaintiffs,

                                   U.S.D.C. #

vs.

                                   Hon. _____

WELLS FARGO HOME MORTGAGE,
INC.,
                                   Lower Case No. 09-102859-CZ

     Defendant.

| | |
|---|---|
| Mel R. Partovich (P23103)<br>John McCarthy (P44171)<br>Attorneys for Plaintiff<br>37887 W. 12 Mile Road Ste B<br>Farmington Hills, MI  48331<br>(248) 488-8180<br>partovich@aol.com | Matthew J. Boettcher (P40929)<br>Charity A. Olson (P68295)<br>PLUNKETT COONEY<br>Attorneys for Defendant<br>Wells Fargo<br>38505 Woodward Ave., Suite 2000<br>Bloomfield Hills, MI  48304<br>(248) 901-4035<br>(248) 901-4018<br>mboettcher@plunkettcooney.com<br>colson@plunkettcooney.com |

**VERIFICATION**

CHARITY A. OLSON, first being duly sworn, states that she is the

attorney for Defendant, and that the foregoing Notice of Removal is true in

substance and in fact to the best of her knowledge, information and belief.

**PLUNKETT COONEY**

By:/s/ Charity A. Olson
Matthew J. Boettcher (P40929)
Charity A. Olson (P68295)
Attorneys for Defendant,
Wells Fargo
Plunkett Cooney
38505 Woodward Ave.
Ste. 2000
Bloomfield Hills, MI 48304
248-901-4018
colson@plunkettcooney.com

DATED:  August 17, 2009


Subscribed and sworn to before me
on August 17, 2009.
/s/ Deborah A. Tupper
Notary Public
Macomb County, Michigan
Acting in Oakland County, Michigan
My Commission Expires:  03/20//2015

Blmfield.P0830.P0830.1149373-1

2

# EXHIBIT A

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

**STATE OF MICHIGAN**
JUDICIAL DISTRICT
6TH JUDICIAL CIRCUIT
COUNTY PROBATE

··· SUMMONS AND COMPLAINT ···

OAKLAND COUNTY **09-102859-CZ**

JUDGE SHALINA KUMAR
STEIN,MICHAEL v WELLS FARGO H

Court address
1200 N Telegraph Road, Pontiac, Michigan 48341

Plaintiff name(s), address(es), and telephone no(s).
MICHAEL STEIN and SUSAN MORRISON, c/o
Plaintiff's Attorney

v

Defendant name(s), address(es), and telephone no(s).
WELLS FARGO HOME MORTGAGE, INC.
Resident Agent: CSC Lawyers Incorporating Service
601 Abbott Road
East Lansing, MI 48823

Plaintiff attorney, bar no., address, and telephone no.
MEL R. PARTOVICH P23103 JOHN McCARTHY p44171
37887 W. 12 Mile Road Ste B
Farmington Hills, MI 48331
(248) 488-8180

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or to take other lawful action (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

Issued **AUG - 5 2009** | This summons expires **NOV - 4 2009** | Court clerk **RUTH JOHNSON**

*This summons is invalid unless served on or before its expiration date.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

Family Division Cases
☑ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

General Civil Cases
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint/
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Oakland County Circuit Court
The action ☐ remains ☑ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 09-098688 CZ | Shalina Kumar | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Birmingham MI | Defendant(s) residence (include city, township, or village)<br>West Bloomfield, MI |
|---|---|
| Place where action arose or business conducted<br>Oakland County, Michigan | |

Date *August 5, 2009*

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (6/04) SUMMONS AND COMPLAINT   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

| PROOF OF SERVICE | SUMMONS AND COMPLAINT<br>Case No. |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NON-SERVICE**

| ☐ **OFFICER CERTIFICATE**<br>I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that:   (notarization not required) | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER**<br>Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

| Service fee<br>$ | Miles traveled | Mileage fee<br>$ | Total fee<br>$ | Signature |
|---|---|---|---|---|
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                          Date

My commission expires: _____ Signature: _____
                          Date                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                        Attachments

_____ on _____
                            Day, date, time
_____ on behalf of _____ .
Signature



OAKLAND COUNTY   09-102859-CZ

JUDGE SHALINA KUMAR

STEIN,MICHAEL   v   WELLS FARGO H

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

MICHAEL STEIN and
SUSAN MORRISON,
     Plaintiffs,

vs.

WELLS FARGO HOME MORTGAGE, INC.
A foreign corporation,
     Defendant.

_____/

MEL R PARTOVICH & ASSOCIATES, PLLC
MEL R PARTOVICH P23103
Attorney for Plaintiffs
37887 W 12 Mile Road Suite B
Farmington Hills, MI 48331
(248) 488 8180
FAX: (248) 488 8185
partovich@aol.com

_____/

RECEIVED FOR FILING
OAKLAND COUNTY CLERK
2009 AUG -5   PM 2: 29
BY:
DEPUTY COUNTY CLERK

## COMPLAINT

A civil action between these parties or other parties arising out of the same transaction or occurrence alleged in the complaint has been previously filed with the Oakland County Circuit Court. The action is no longer pending. The docket number was 09-098688 CZ and the Judge was Shalina Kumar.

_____
MEL R PARTOVICH P23103

NOW COMES, Plaintiff, by and through its attorneys, MEL R PARTOVICH & ASSOCIATES, PLLC, and for its Complaint states as follows:

1.    Plaintiff MICHAEL STEIN is an individual residing in Birmingham, Michigan.

2.    Plaintiff SUSAN MORRISON is an individual residing at 7328 Simsbury Drive, West Bloomfield, Michigan.

3.    Defendant WELLS FARGO HOME MORTGAGE, INC., is a foreign corporation whose resident agent is located in East Lansing, Michigan.

4.    This action involves real property located in West Bloomfield, Michigan, the amount in

controversy is in excess of $25,000.00 and is otherwise within the jurisdiction of this Court.

## Count I-Mutual Mistake of Fact/Law

5. Plaintiff STEIN was listed as a co-borrower on the original loan application with Defendant.

6. Subsequent thereto, Defendant insisted that STEIN could not be on the Mortgage or the Note.

7. Plaintiff STEIN agreed to the demands of the Defendant and as such, never signed the Note.

8. The Defendant advised Plaintiff STEIN that in as much as he was not on the Note they would be forwarding the appropriate paperwork to remove him from the Mortgage.

9. The recording of Plaintiff STEIN's name on the Mortgage as done in error and constitutes a mutual mistake in fact.

10. The Defendant is attempting to foreclose on Plaintiff STEIN despite the fact that he did not sign the Note, was not supposed to be on the Mortgage, and is not a deed holder of record as of the date hereof on the subject real property.

11. All notices and demands were sent to Plaintiff SUSAN MORRISON at 7328 Simsbury Drive, West Bloomfield, Michigan.

12. Plaintiff STEIN received no notices or demands from Defendant, nor did he have any knowledge on the ongoing events with regard to this transaction.

13. Plaintiff STEIN'S name was wrongfully included on the Mortgage and there was no consideration for his name on the mortgage.

## Count II-Erroneous Publication

14. Defendant WELLS FARGO holds a mortgage on real property located in West Bloomfield, Michigan commonly known as 7328 Simsbury, the same being Mortgage Loan Number 0055456883.

15. In January of 2009, Defendant WELLS FARGO committed a grievous error by representing that the amount owed on the mortgage was substantially more than what was owed.

16. Defendant's accounting with regard to the new publication amount is still erroneous and Plaintiff MORRISON has written letters to Defendant's attorneys specifying the same.

17.   Plaintiffs have requested a meeting for an adjustment to the loan in accordance with recent legislation that has been passed in the State of Michigan.

18.   The Defendant has refused and/or neglected to file the publication properly and is attempting to profit by its own wrong from the filing of the first erroneous publication.

      WHEREFORE, Plaintiff prays that this Court enter a Judgment in her favor and against the Defendant, WELLS FARGO HOME MORTGAGE, INC., in an amount in excess of $250,000.00, together with interest, attorney fees, and costs.

      **Count I-Action for Temporary Restraining Order and to Show Cause**

19.   Defendant WELLS FARGO holds a mortgage on real property located in West Bloomfield, Michigan commonly known as 7328 Simsbury, the same being Mortgage Loan Number 0055456883.

20.   Plaintiff MICHAEL STEIN is listed as a Mortgagee on the mortgage of Defendant on said property (See Exhibit A attached hereto).

21..  Plaintiff MICHAEL STEIN did not execute the Note which is incorporated by reference into said Mortgage.

22.   Plaintiff STEIN has no interest in said real estate, having deeded his interest to Susan Morrison, the remaining mortgagee on Defendant's mortgage.(See Exhibit B).

23.   In view o f the foregoing, Plaintiff STEIN has no interest in the property and no interest in the  debt owed on the property.

24.   In the alternative, in the event this Court determined that he had any interest in said debt, Plaintiff STEIN is ready, willing and able to assign any such interest to Defendant's mortgage to Defendant.

25.   That foreclosure notice has been published by the Defendant and a foreclosure sale is now scheduled for August 11, 2009.

26.   Said Notice is deficient because it names Plaintiff MICHAEL STEIN as being in default on said Mortgage.

27.   Said Notice is deficient because the amount claimed is erroneous.

28.   Unless this Court enters a Temporary Restraining Order to prevent the Defendant from continuing to foreclosure upon the subject property against Plaintiff herein, Plaintiff STEIN's credit will be impaired and Plaintiff STEIN will suffer irreparable harm.

29.   Unless this Court enters a Temporary Restraining Order to prevent the Defendant from continuing to foreclosure upon the subject property for the wrong amount, Plaintiff MORRISON will suffer irreparable harm, being unable to cure the or redeem the subject property at the erroneous amount published by Defendant.

30.   Plaintiff MORRISON hereby also moves for a permanent restraining order to remain in effect against Defendant from foreclosing on the subject property until such time as the legally prescribed foreclosure procedure is adhered to by Defendant, including the publishing of an accurate arrears and redemption amount in its Notice of Foreclosure.

31.   Plaintiff STEIN hereby also moves for a permanent restraining order to remain in effect against Defendant from foreclosing on the subject property until such time as the legally prescribed foreclosure procedure is adhered to by Defendant, including the publishing of an accurate Notice of Foreclosure.

WHEREFORE, Plaintiff prays that this court;

a. Enter the Temporary Restraining Order attached hereto, which Order shall become effective upon service on Defendant, WELLS FARGO HOME MORTGAGE, INC., via certified mail, return receipt requested to its Michigan Resident Agent; and

b. Enter its Order to Show Cause if any Defendant may have as to why the Temporary Restraining order should not become Permanent; and

c. for such other and further relief as the Court may deem equitable in the circumstances.

Respectfully submitted;

MEL R PARTOVICH & ASSOCIATES, PLLC
MEL R PARTOVICH P23103
Attorney for Plaintiff
37887 W 12 Mile Road Suite B
Farmington Hills, MI 48331
(248) 488 8180
FAX: (248) 488 8185
partovich@aol.com

August 4, 2009

APR-08-2009 WED 05:19 AM WELLS FARGO HOME MTG      FAX NO. 909 473 6832

EXHIBIT

A

*LIBER: 34680  PAGE: 802*

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY          of          OAKLAND
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

LAND SITUATED IN THE TOWNSHIP OF WEST BLOOMFIELD, COUNTY OF WASHTENAW, STATE OF MICHIGAN, UNIT 11, BUILDING 4, SIMSBURY II A CONDOMINIUM ACCORDING TO THE CONSOLIDATING AND SUPERCEDING MASTER DEED RECORDED IN LIBER 32065, PAGES 362 THROUGH 397, INCLUSIVE, OAKLAND COUNTY RECORDS, AS AMENDED, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 769, TOGETHER WITH RIGHTS IN COMMON ELEMENTS AND LIMITED COMMON ELEMENTS AS SET FORTH IN THE AFOREMENTIONED MASTER DEED AND AS DESCRIBED IN ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED.

TAX ID# 18-34-301-011

MORE COMMONLY KNOWN AS 7328 SIMSBURY DR WEST BLOOMFIELD, MI 48322

which currently has the address of          7328 SIMSBURY DR
                                                  [Street]

WEST BLOOMFIELD          , Michigan          48322          ("Property Address"):
        [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01          Page 3 of 13          Initials:

*LIBER: 34680  PAGE: 803*

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any, check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
User Forms Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01                   Page 4 of 13          Initials: _____

*LIBER: 34680  PAGE: 804*

provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laua Forms Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01                    Page 5 of 13          Initials: _____

APR-08-2009 WED 05:21 AM WELLS FARGO HOME MTG        FAX NO. 909 473 6832        P. 07

*LIBER: 34680   PAGE: 805*

subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Law Forms Inc. (800) 446-3555
LF #FOJA3023-MERS 1/01                    Page 6 of 13        Initials: MLS

*LIBER: 34680 PAGE: 806*

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Forms Inc. (800) 446-3555
LF #FNMA3023-MERS 1/01                    Page 7 of 13          Initials: _____

*LIBER: 34680 PAGE: 807*

pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01

Page 8 of 13             Initials: _____

*LIBER: 34680  PAGE: 808*

Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Forms Inc. (800) 446-3555
LF  #FNMA3023-MERS 1/01                    Page 9 of 13          Initials: *MVS*

*LIBER: 34680  PAGE: 809*

the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms,

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Forms Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01                    Page 13 of 13          Initials: _____

APR-08-2009 WED 05:24 AM WELLS FARGO HOME MTG        FAX NO. 909 473 6832        P. 12

*LIBER: 34680 PAGE: 810*

as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Inter Forms Inc (800) 446-3555
LFI #FNMA3023-MERS 1/01                    Page 11 of 13        Initials

APR-08-2009 WED 05:25 AM WELLS FARGO HOME MTG       FAX NO. 909 473 6832       P. 13

*LIBER: 34680   PAGE: 811*

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

APR-08-2009 WED 05:25 AM WELLS FARGO HOME MTG       FAX NO. 909 473 6832

*LIBER: 34680   PAGE: 812*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
SUSAN F MORRISON                           -Borrower

_____ (Seal)
MICHAEL L STEIN                            -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

[Space Below This Line For Acknowledgment]

**STATE OF MICHIGAN,**                Oakland              County ss:

The foregoing instrument was acknowledged before me this      15TH DAY OF OCTOBER, 2004

by   SUSAN F MORRISON, A SINGLE WOMAN AND MICHAEL L STEIN, A SINGLE MAN

[person acknowledging]

My commission expires:

Notary Public

LYNDA M HODGSON
Notary Public, Washtenaw County, MI
Acting in   Oakland   County
My Commission Expires 08/04/05

**PREPARED BY DARICA BARRETT**

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3023 1/01
Laser Form Inc. (800) 446-3555
LFI #FNMA3023-MERS 1/01         Page 13 of 13

*LIBER: 34680   PAGE: 813*

# CONDOMINIUM RIDER

LOAN NO. 100094600000288680

THIS CONDOMINIUM RIDER is made this **15TH** day of **OCTOBER**, 2004 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**PIONEER MORTGAGE, INC.
A MICHIGAN CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**7328 SIMSBURY DR
WEST BLOOMFIELD, MI 48322**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**SIMSBURY II**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property;

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
PNMA3140 (10/00)                                    Page 1 of 2                                    **FORM 3140 1/01**

*LIBER: 34680   PAGE: 814*

and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or, (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
                          -Borrower
SUSAN F MORRISON

_____ (Seal)
                          -Borrower
MICHAEL I. STEIN

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

[Sign Original Only]

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
PNMA3340 (10/00)                        Page 2 of 2                        FORM 3140 1/01

LIBER41172 PG105

B

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2009 MAY 19  PM 12: 18

94403
LIBER 41172 PAGE   105
$10.00 DEED - COMBINED
$4.00 REMONUMENTATION
05/19/2009 12:32:12 P.M.   RECEIPT# 40263

PAID   RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

## QUITCLAIM DEED

TOTAL ALL DOCUMENTS ================14.00

The Grantor, **Michael L. Stein**, a single man, whose address is 556 Oak, Birmingham ,MI 48009, quit claims to the Grantee, **Susan F. Morrison**, a single woman, whose address is 7328 Simsbury Drive, West Bloomfield, Michigan 48322, the premises situate in the Township of West Bloomfield, County of Oakland, State of Michigan, described as:

7000769

T2N,R9E, Sec 34 Oakland County Condominium Plan No 769, Simsbury II, Unit 11, Bldg 4, L 12735, Parcel No 574-7-8-93 FR 300-047

18-34-301-011

for ($1.00) One dollar and other valuable consideration, pursuant to MCLA 207.505 (d).

This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan right to farm act.
Dated: May 14, 2009

By: /s/ _____
Michael L. Stein

IP R E

STATE OF MICHIGAN    )
OAKLAND COUNTY     )

The foregoing instrument was acknowledged before me this 14th day of May , 2009 by the person known to me as Michael L. Stein.

Subscribed and sworn to before me on the 14th day of May , 2009
/s/ _____
Notary public, State of Michigan, County of Washtenaw
My commission expires 10/12/2012
Acting in the County of. Oakland

J. ROSE
Notary Public, State of Michigan
County of Washtenaw
My Commission Expires Oct. 12, 2012
Acting in the County of Oakland

Drafted by:
MEL H. PARTOVICH & ASSOCIATES, P.L.L.C.
37887 W. 12 MILE ROAD, SUITE B
FARMINGTON HILLS, MICHIGAN 48331

Return to:
Grantee

Send subsequent bills to:
Grantee

Tax parcel #

Recording fee:

Transfer fee

O.K. - KB



OAKLAND
COUNTY   09-102859-CZ

JUDGE SHALINA KUMAR
STEIN,MICHAEL  v  WELLS FARGO H

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

MICHAEL STEIN and
SUSAN MORRISON,
    Plaintiffs,

vs.

WELLS FARGO HOME MORTGAGE, INC.
A foreign corporation,
    Defendant.
_____/

MEL R PARTOVICH & ASSOCIATES, PLLC
MEL R PARTOVICH P23103
Attorney for Plaintiffs
37887 W 12 Mile Road Suite B
Farmington Hills, MI 48331
(248) 488 8180
FAX: (248) 488 8185
partovich@aol.com
_____/

## ORDER TO SHOW CAUSE

    Defendant, WELLS FARGO HOME MORTGAGE, INC. is hereby ordered to appear
before the honorable Judge **SHALINA KUMAR** on _8/17/2009_, the ___ day of
_@1:30PM_, 2009, Oakland County Circuit Court, 1200 N Telegraph Road, Pontiac,
Michigan 48341, to show cause _WHY A_ Temporary Restraining Order _should_
_not be issued._


              **AUG 0 5 2009**        _WENDY POTTS_
                                CIRCUIT COURT JUDGE
                             **For SHALINA KUMAR**
This Order shall be served upon the Michigan Resident Agent for the defendant WELLS FARGO
HOME MORTGAGE, INC. in accordance with MCR 2.105(D), no later than seven (7) days
before the scheduled hearing date.